(Surrogate's Court, Westchester County. November, 1894.)

WILLS—VALIDITY—FRAUD.

An alleged will was executed four or five hours before the death of testatrix, while she was in articulo mortis and unable to speak. She was a German, did not understand the English language, and the scrivener did not understand German; but one H., who and whose infant children were the principal beneficiaries, professed to ask testatrix in German as to the disposition of her property, and she would answer by a nod, and then H. repeated it in English to the scrivener. Soon after the death of testatrix

the will was offered for probate, the names of the infant beneficiaries being suppressed, and a legatee named in the will being falsely personated by another. *Held,* that the alleged will was void, as procured by fraud.

Application for the probate of the alleged will of Catherine Graf. Denied.

W. S. Allerton, for proponent.
Appell & Tompkins, for contestant.
Hiram Paulding, for special guardian.

COFFIN, S. The alleged will of the deceased was written and executed four or five hours before her death. Her death was a result of apoplexy. At the time of the execution of the alleged will she was in extremis mortis. Her tongue and right side were paralyzed. She was in bed, and could not speak or articulate. She was a German, and the person who drew the will did not understand the German language, nor she English; and, in order to obtain instructions for the preparation of the paper, another German woman, Mrs. Helwig, who and whose infant children were to become beneficiaries therein, professed to ask the sick woman, in her native language, if she wished to dispose of her property thus and so, and she would answer by a nod, and then Mrs. Helwig would repeat it in English to the scrivener, who wrote accordingly. The alleged will so prepared purports to give the whole estate to Mrs. Helwig for life, subject to the payment of debts and a legacy of $150 to Frederika Mack, with remainder to Mrs. Helwig's children. Soon after the death of Mrs. Graf the executor named in the paper propounded, a Mr. Stillwell, his lawyer, and the legatee Mrs. Mary Helwig, and a female represented to be Frederika Mack, in order to escape a contest, as alleged, went at once to the court to obtain immediate probate of the paper; the petition stating the value of the real and personal estate to be $2,500, and also who were the legatees, but omitting to state the names of the infant children. The female accompanying them signed the name of "Frederika Mack" to a waiver of citation and consent to the immediate probate, and was introduced by Mr. and Mrs. Helwig to the notary, who was also the proponent's lawyer, by that name, and he certified to her acknowledgment. This female, it is shown, was not Mrs. Mack, but personated her by the procurement of the persons concerned or some of them. On the same day letters testamentary were issued to Barnett Woodard, the executor named, and he at once, and on the same day, drew out of a bank at Mount Vernon money of the estate, and paid the lawyer for his services in the matter about $150. Who instigated this fraud upon the court it may not be very material to inquire, but it is certain that Mr. and Mrs. Helwig were parties to it. Nor if Mrs. Mack were present can it be discovered why any contest could be feared, unless it were based upon a consciousness of some wrongdoing in the premises. A Mrs. Ehrbar, who was an old and intimate friend of the deceased, and who or whose children had been made beneficiaries under a former will, was not permitted to see the dying woman except

in the presence of Mr. and Mrs. Helwig. Other facts were developed by the testimony upon which it is deemed unnecessary to comment. It was discovered by the clerk of this court, on the same day, that the infant children named in the alleged will as beneficiaries, and not named in the petition as such, had not been cited, and he at once wrote to the executor to return the letters, which was subsequently done, but not until after the money was drawn from the bank. This proceeding was then instituted, Mrs. Mack and the infant children cited, and a special guardian for the latter appointed. Mrs. Mack, who is a legatee to the extent of $150 in the alleged will, had been a beneficiary to a larger amount in a former will, and contests the present one, professing to be able to establish the former.

Swinburne, in commenting upon the assent of a testator in a case like this, says, in quaint language:

"It is to be presumed that he did answer, 'Yes,' rather to deliver himself from the importunity of the defendant than upon devotion or intent to make his will; because it is for the most part grievous to those that be in that extremity to speak or be demanded any question, and therefore are ready to answer any question almost, that they may be quiet; which advantage crafty and covetous persons, knowing very well, are then most busy, and do labor with both tooth and nail to procure the sick person to yield to their demands, when they perceive he cannot easily resist them, neither hath time to revoke the same afterwards, being then passing to another world. And therefore worthily and with great equity is that to be deemed for no testament when the sick person answereth, 'Yea,' the interrogation being made by a suspected person, as well as in respect of presumption of deceit in the one as of defect of meaning of making a testament in the other. And this is true especially when there is a former testament." Swinb. Wills, pt. 2, § 25.

These sound and just observations apply with great and conclusive force to this case, and the facts attending the making of the alleged will, and the subsequent suspicious and fraudulent transactions, leave no doubt that it is my plain duty to refuse probate of the paper in question, with costs against the proponent out of any funds of the estate under his control. Decreed accordingly. An order should be entered revoking the letters issued on the fraudulent probate.